Judith JAVA and Carroll H. Hudson, individually, on behalf of themselves, and all others similarly situated, Plaintiffs,

v.

CALIFORNIA DEPARTMENT OF HUMAN RESOURCES DEVELOPMENT, Gilbert Sheffield as Director of the California Department of Human Resources Development, Esther Perry, as Manager of the Pittsburg, California branch of the California Department of Human Resources Development, Ramon L. Jimenez as Manager of the Richmond, California branch of the California Department of Human Resources Development, Defendants.

No. C–69 350.

United States District Court, N. D. California.

April 11, 1970.

Probable Jurisdiction Noted Oct. 26, 1970.

See 91 S.Ct. 120.

Stephen P. Berzon and James M. Klein, of the Contra Costa Legal Services Foundation, Richmond, Cal., for plaintiffs.

Asher Rubin, Deputy Atty. Gen., for defendants.

## ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

Before JERTBERG, Circuit Judge, and ZIRPOLI and WOLLENBERG, District Judges.

PER CURIAM.

This is a challenge, on both statutory and constitutional grounds, to certain aspects of the California unemployment compensation program. This program, certified by the Secretary of Labor under the provisions of the Social Security Act (42 U.S.C. § 503), provides for the payment of insurance benefits, over an extended period of time, to persons who find themselves unemployed "through no fault of their own". Calif.Unempl.Ins. Code § 100. These payments begin after an initial determination of eligibility by an eligibility interviewer who is directed to consider all information submitted by the claimant, his former employer, and others. Calif.Unempl.Ins. Code §§ 1326 et seq. If this initial determination is favorable to the claimant, payments begin immediately. The employer, however, is then given ten days in which to appeal; if an appeal is filed, benefits are stopped pending decision on the appeal without any provision for a pre-termination hearing. Calif.Unempl. Ins.Code § 1335. It is this statutorily directed stoppage of benefits without prior notice and hearing which is under challenge by plaintiffs.

Plaintiffs' argument is three-fold. First, it is said that since the median delay in resuming payments after an employer has invoked § 1335 is about seven weeks, the California program conflicts with certain clearly defined national and state goals. The California scheme is intended to stave off extreme personal hardship as well as society-wide depression in times of increasing unemployment. See Calif.Unempl.Ins.Code §§ 100–101. This end is clearly thwarted when a claimant must wait some fifty days for payments to resume. Second, the California statute is said to violate the federal law which directs that state unemployment compensation programs must be "reasonably calculated to insure full payment of unemployment compensation when due". 42 U.S.C. § 503(a)(1). Third, it is argued that the denial of benefits, without a prior hearing, to persons who have already been found in-

itially eligible for such benefits violates plaintiffs' rights to due process of law under the federal constitution. Most relevant to this is the Supreme Court's recent decision in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

The constitutional aspects to this challenge to § 1335 warranted the appointment of a three-judge court. 28 U.S.C. § 2284.

■ Plaintiffs' three arguments are, in fact, nearly co-extensive. The "payment when due" directive of the Social Security Act is indicative of a congressional desire to help the jobless when they need it most. It can also be read as a reiteration of the classic due process standard, i. e. when a person has been found entitled to a government benefit, this benefit in most cases cannot be taken away without certain pre-termination procedures being followed.[1] It seems best, therefore, to analyze the operation of the California system in order to determine when an individual claimant is "entitled" to unemployment compensation. If payments are "due", deprivation of those payments without a prior hearing would raise questions under both the federal statute and the Constitution. Most simply, when is "when due"?

The parties herein have entered into a stipulation which does much to clarify the actual practices of the State Department of Human Resources Development. A claimant for unemployment insurance benefits must initially file Forms DE 1101, 1426 and 3893. These forms, taken together, apprise the eligibility interviewer of the basis of the claim, the name of the claimant's previous employer, the reason for his no longer working, his work experience, and so on. The question most frequently basic to

disputed cases, i. e. the claimant's reasons for no longer working, is answered on DE 1101 and copies of this form are immediately sent to the previous employer for verification. The employer is then bound to submit, within ten days, "any facts then known which may affect the claimant's eligibility for benefits". Calif.Unempl.Ins.Code § 1327. If the employer raises an issue as to eligibility, the claimant may then be asked to complete Form DE 4935, which asks for detailed information about the termination of claimant's previous job.

All of this tends to show that the eligibility interviewer has at his disposal information from both employer and claimant prior to the "Eligibility Benefit Rights Interview" at which he speaks personally with the claimant. The interviewer has, according to the Local Office Manual used in California, the duty "to seek from any source the facts required to make a prompt and proper determination of eligibility". The actual decision may be suspended an additional ten days to get further information. If employer statements leave certain questions unresolved, the employer "must be given an opportunity to provide additional information". L.O.M. §§ 1400.3; 1400.5. At the interview itself, the interviewer is told to make "telephone contact with other parties * * *." if at all possible. L.O.M. § 1404.4. Interested persons must be allowed to "confirm, contradict, refute, or explain any evidence [which is relevant]". L.O.M. § 1404.4.

The eligibility interviewer must, then, consider the evidence presented by all sides and make a "determination" or "determination ruling" as to eligibility. There seems little question that this is the critical point in the California procedure. The Department itself proclaims

---

1. An entitlement to unemployment insurance benefits or welfare payments is no different from the due process standpoint than an entitlement to a pension, or a farm subsidy, or a professional license to practice. Once a person's qualification for the benefit is shown, it cannot be arbitrarily denied, or withdrawn, without due process standards being fulfilled. See Goldberg v. Kelly, cit. supra, note 8; and Van Alstyne, The Demise of the Right-Privilege Distinction in Constitutional Law, 81 Harv.L.R. 1439 (1968).

that "[t]he determination is the point at which any issue affecting the claimant's eligibility is decided and fulfills the Department's legal obligation to insure that [b]enefits are paid promptly if claimant is eligible". L.O.M. § 1400.1. Payments begin upon this decision, and for 95% of claimants, no further problem arises as to initial eligibility.

Defendants, however, argue that payments are not in fact "due" until another ten days passes without the employer appealing. This flies in the face of actual Department practice, which is to begin payments immediately upon the initial determination of eligibility and to stop them later upon an employer appeal.[2] The appeal Form DE 1000, upon being filed, halts payments. No hearing is held; no chance is given the claimant to rebut, even in writing, new information offered by the appellant. It is clear that in California payments become "due", and are paid, upon the favorable decision of the eligibility interviewer. It is only subsequently, generally after two payments have been made, that an employer appeal will result in automatic stoppage.

"When due" is, then, upon the initial determination of eligibility. At that point, all parties have been heard, evidence has been collected, and an adjudication made. This being the case, California's provision allowing benefits to be stopped without any pre-termination procedures raises serious due process questions. And the continued arrest of payments for a median period of seven weeks similarly causes doubt as to whether California's program is "reasonably calculated to insure full payment of unemployment compensation when due". 42 U.S.C. § 503(a) (1).

This Court finds the present case indistinguishable from Goldberg v. Kelly,

cit. supra. See also Wheeler v. Montgomery, 397 U.S. 280, 90 S.Ct. 1026, 25 L.Ed.2d 307 (1970). Goldberg challenged the right of a State to terminate welfare benefits without a prior evidentiary hearing at which the recipient is given the chance to confront adverse witnesses and present his own evidence, verbal or written. As here, the defendants in Goldberg argued the State's interest in protecting public funds. The Supreme Court, balancing this interest against the interest of the welfare recipient in having the necessities of life while the bureaucracy mulls over his continued eligibility, found the fiscal argument somewhat weak, and rejected it. Defendants herein suggest that the unemployed person is perhaps not in such dire straits as the recipient of public assistance, in that he can always go on welfare, and thus save himself from absolute destitution. It is scant comfort to the disaster-stricken that there is someone, somewhere, worse off than he, and this Court finds that the situation of the unemployed person herein is every bit as lamentable from the legal standpoint as that of the welfare client in Kelly v. Wyman, 294 F.Supp. 893 (D. C.1968), and the garnishee in Sniadach v. Family Finance Corp. of Bay View, et al., 395 U.S. 337, 89 S.Ct. 1820, 23 L. Ed.2d 349 (1969).

Further, the defendants' efforts to distinguish this case from the constitutional reasoning of Kelly and Sniadach only serve to point up the validity of the statutory grounds argued by plaintiffs. The most fundamental purpose of both the federal and the state unemployment compensation laws is "to *prevent* the burden of injured employees becoming charges upon society". Abelleira, et al. v. District Court of Appeal, *etc.*, 17 Cal. 2d 280, 300, 109 P.2d 942, 953 (1941); Calif.Unempl.Ins.Code §§ 100–01.[3] De-

---

2. "At least since 1948 * * * the Department of Human Resources Development * * * has paid out unemployment compensation benefits to claimants immediately after such claimants have been determined eligible by a determina-

tions interviewer". Parties' Stipulation, filed April 14, 1970.

3. The total inadequacy of locally administered charity in times of nation-wide cyclical unemployment led sponsors of unemployment insurance legislation to urge

fendants urge that public assistance is available to plaintiffs, but Congress, in enacting the Social Security Act, has found that the dole is often inadequate and always humiliating. This was certainly the primary reason for 42 U.S.C. § 503(a) (1) and the requirement that State programs assure full payment of benefits "when due". Yet some five thousand *eligible* recipients each year in California find their payments halted for a median period of seven weeks. Since the average period of unemployment in California is, according to uncontested argument before this Court, some nine weeks, it is clear that as to these people, payments are not made "when due", and the fundamental intent and policy of the Social Security Act are thwarted.

■ Accordingly, this Court finds Calif.Unempl.Ins.Code § 1335 defective on both constitutional and statutory grounds. By not providing for ·a pre-termination hearing, it runs counter to the principles enunciated in Goldberg v. Kelly, *cit. supra*. And by being applied so as to result in a median seven week delay in payments to claimants who have been found eligible for such payments, the California statute violates the directive of 42 U.S.C. § 503(a) (1).

Therefore, it is hereby ordered that defendants, their successors in office, agents, and employees, be, and are, enjoined, during the pendency of this action, from enforcing that part of Calif. Unempl.Ins.Code § 1335 which provides that "[i]f an appeal is filed, benefits with respect to the period prior to the final decision on the appeal shall be paid only after such decision". Defendants, their successors in office, agents, and employees, shall not suspend unemploy-

ment benefits due plaintiffs and members of their class on the ground that an eligibility determination has been appealed except after a prior hearing in accordance with the principles enunciated in Goldberg v. Kelly, *cit. supra*.

Execution of this Order will be stayed ten (10) days from the date of its filing. Any further stay will be granted only upon a proper motion and showing by defendants.

---

upon Congress a purely federal scheme. Political and legal considerations resulted, however, in the present federal-state setup, with the federal government imposing many standards to be followed by the States. Among these standards was the requirement of payment of claims "when due". On the legislative history, see generally Witte, Development of Un-

employment Compensation, 55 Yale L.J. 21 (1945). See also Note, Charity vs. Social Insurance in Unemployment Compensation Laws, 73 Yale L.J. 334 (1963); Rivard v. Bijou Furniture Co., 68 R.I. 358, 27 A.2d 853 (1942); Steward Machine Co. v. Davis, 301 U.S. 548, 586–587, 57 S.Ct. 883, 81 L.Ed. 1279 (1937).