

# The Attorney General of Texas

May 22, 1981

MARK WHITE
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable John J. Kavanagh, M.D.
Commissioner
Texas Department of Mental Health
  and Mental Retardation
P. O. Box 12668, Capitol Station
Austin, Texas 78711

Opinion No. MW-339

Re: Consent for comprehensive diagnosis and evaluation and for admission to non-residential mental retardation services

Dear Dr. Kavanagh:

You ask several questions involving an interpretation of the Mentally Retarded Persons Act of 1977, article 5547-300, V.T.C.S. You first ask whether this statute or any other statutory, constitutional or common law provision requires legally adequate consent for the performance of a comprehensive diagnosis and evaluation.

Section 3(20) of article 5547-300, V.T.C.S., provides the following definition:

(20) 'Legally adequate consent' means consent given by a person when each of the following conditions has been met:

(A) legal capacity: The person giving the consent is of the minimum legal age and has not been adjudicated incompetent to manage his personal affairs by an appropriate court of law;

(B) comprehension of information: The person giving the consent has been informed of and comprehends the nature, purpose, consequences, risks, and benefits of and alternatives to the procedure, and the fact that withholding or withdrawal of consent shall not prejudice the future provision of care and services to the client. Furthermore, in cases of unusual or hazardous treatment procedures, experimental research, organ transplantation, and non-therapeutic surgery, the person giving the consent has been informed of and comprehends the method to be used in the proposed procedure; and

(C) voluntariness: The consent has been given voluntarily and free from coercion and undue influence.

p. 1112

This standard of consent represents an attempt to state comprehensively the judicially developed standard of informed consent and to tailor it to persons who may be mentally retarded. As stated in Wilson v. Scott, 412 S.W. 2d 299, 301 (Tex. 1967):

> Physicians and surgeons have a duty to make a reasonable disclosure to a patient of risks that are incident to medical diagnosis and treatment. This duty is based upon the patient's right to information adequate for him to exercise an informed consent to or refusal of the procedure. [Citations omitted]. The nature and extent of the disclosure depends upon the medical problem as well as the patient. In some medical procedures the dangers are great; in others they are minimal.

Although the Mentally Retarded Persons Act expressly requires legally adequate consent in only three instances, see sections 35, 46(a) and 56(c) of article 5547-300, we believe legally adequate consent is required where the common law would require informed consent. It is to be noted that the standard is flexible, in that the nature and extent of the information given will vary with the risks inherent to the procedure.

In answer to your first question, we believe that article 5547-300, V.T.C.S., requires legally adequate consent for the performance of a comprehensive diagnosis and evaluation, which is defined as follows:

> 'Comprehensive diagnosis and evaluation' means a study including a sequence of observations and examinations of a person leading to conclusions and recommendations formulated jointly, with dissenting opinions, if any, by a diagnosis and evaluation team. The study shall include but not be restricted to a social and medical history, and medical, neurological, audiological, visual, educational, appropriate psychological, and sociological examinations, and an examination of the person's adaptive behavior level.

V.T.C.S. art. 5547-300, S3(24).

You next ask whether a comprehensive diagnosis and evaluation must be performed before a person may be admitted to residential or non-residential mental retardation services. Section 28 of article 5547-300, V.T.C.S., clearly provides that no one is eligible to receive mental retardation services unless he first receives a comprehensive diagnosis and evaluation. "Mental retardation services" is defined to include residential care and other programs of treatment and rehabilitation for mentally retarded persons. Id. S3(8).

You next ask whether legally adequate consent is required for admission to residential or non-residential mental retardation services. In sections 35 and 46 of article 5547-300, V.T.C.S., the statute specifically requires legally adequate consent for admission to residential services. In addition, we believe the common law requires the acquisition of informed consent before a retarded person receives diagnosis or

treatment. The informed consent standard, as adapted to mentally retarded persons by article 5547-300, V.T.C.S., is the standard of legally adequate consent.

You next ask whether mental retardation services must be denied an adult proposed client if he has not been declared incompetent, has no guardian, and does not possess the mental capacity to give legally adequate consent for admission to mental retardation services. We believe the statute clearly requires us to answer this question in the affirmative.

If the services must be denied, you next ask whether the proposed client has a property right protected by the fourteenth amendment to the U.S. Constitution similar to the one recognized in Java v. California Department of Human Resources Development, 317 F. Supp. 875 (N.D. Cal. 1970), aff'd, 402 U.S. 121 (1971). Java involved unemployment compensation claimants who were ruled eligible for benefits at an eligibility interview but whose payments were stopped, pending their former employer's appeal. The district court held that absence of a pretermination hearing constituted a denial of procedural due process. The Supreme Court did not reach the constitutional issue because it found the state practice to conflict with the Social Security Act.

We believe the situation you pose involving mentally retarded clients is distinguishable from that in Java. The state never obtains the right to provide the mental retardation services unless the client has granted adequate consent to them. Although a client who has not given consent is denied the services, we do not believe the denial of services infringes any right protected by the fourteenth amendment.

You next inquire about a situation where an adult client has been admitted to mental retardation services and it is then determined that he has never been judicially declared incompetent, has no guardian, and does not possess the mental capacity to give legally adequate consent for the provision of such services. You ask whether the client must be discharged from the services. We answer in the affirmative because one essential statutory criteria for the provision of services to the person has not been met.

If such a client must be discharged, you ask whether he has a property right protected by the fourteenth amendment to the U.S. Constitution similar to the one recognized in Java. We do not believe he has such a property right, in that he has never initially proved eligibility for such services nor has the state ever acquired the power to provide them. However, article 5547-300 may impose additional duties on the superintendent in particular cases. See §§35, 49. See also subchapter I.

If, however, a mentally retarded client was admitted to facilities of the department under laws in force prior to the enactment of article 5547-300, he may remain until appropriate alternative placement is found or until he can be admitted or committed to a facility under the new law. V.T.C.S. art. 5547-300, §49(a). If the person cannot be discharged without safety to himself or the general public, the superintendent or director of the institution may apply for his commitment. Id. §49(b).

You finally ask whether the facility has any duty to initiate a guardianship proceeding to determine whether the client should be legally adjudicated incompetent and whether a guardian should be appointed for the client.   The statute does not impose any duty on the facility to initiate a guardianship proceeding for the client and the facility is prevented in some cases from serving as a guardian.  See Probate Code §§130A-130O.

Nonetheless, when a person who must be released is in need of further care, the department may assist him in securing it.  It may inform a relative or other person interested in the client's welfare of the possibility of a guardianship.  The relative, if willing, can become guardian and consent to the comprehensive diagnosis and evaluation necessary to admission to mental retardation services.  In the alternative, where the client meets the criteria set forth in article 5547-300, section 37(a), a judicial commitment under that section may be sought.  Thus, although the department has no duty to initiate a guardianship proceeding, it can take measures to assist a discharged client in need of institutional care to be provided a guardian or committed to an appropriate facility.

## SUMMARY

Legally adequate consent as defined by section 3(20) of article 5547-300, V.T.C.S., is required for the performance of a comprehensive diagnosis and evaluation.  A comprehensive diagnosis and evaluation must be performed before a person may be admitted to residential or non-residential mental retardation services.  Legally adequate consent is required for admission to residential or non-residential mental retardation services.  If an adult proposed client has not been declared incompetent, has no guardian, and does not possess the mental capacity to give legally adequate consent for admission to mental retardation services, he must be denied the services.  If he has been admitted to services and it is then determined that he has never been judicially declared incompetent, has no guardian, and does not possess the mental capacity to give legally adequate consent, he must be discharged from such services.   In neither case does he have a property right protected by the fourteenth amendment to the United States Constitution.  However, a client admitted to a facility under prior law may remain there until appropriate alternative placement can be found.  If he cannot be discharged without safety to himself or the public, the superintendent may apply for his commitment.  The facility has no duty to initiate a guardianship proceeding to determine whether the client should be legally adjudicated incompetent, but the department may take measures to assist a discharged client in need of institutional care to be provided a guardian or committed to an appropriate facility.

Very truly yours,

MARK WHITE
Attorney General of Texas

*JOHN W. FAINTER, JR.*
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Susan L. Garrison
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Martha Allan
Jon Bible
Rick Gilpin
Bruce Youngblood