**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, et al., Plaintiffs,**

v.

**Raymond J. DONOVAN, Secretary of the United States Department of Labor, Defendant.**

Civ. A. No. 82–1458.

United States District Court, District of Columbia.

June 10, 1983.

On Motion for Reconsideration July 1, 1983.

On Injunctive Relief Aug. 15, 1983.

---

*Id.*

John A. Fillion, Jordan Rossen, Leonard Page, Detroit, Mich., Stephen P. Berzon, Michael Rubin, San Francisco, Cal., A.L. Zwerdling, Wendy Kahn, Washington, D.C., for plaintiffs.

Dennis G. Linder, Mark C. Rutzick, Jose Sandoval, Civ. Div., Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

This action is before the Court on cross-motions for summary judgment. As set forth below, the Court grants plaintiffs' motion and denies defendant's motion.

### I. Introduction

The plaintiffs are the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the UAW), and five members: Marian Jackson, Reginald James, Emmett Pompey, Effie Simmons, and Helen Vance. The defendant is the Secretary of the United States Department of Labor, Raymond Donovan (the Secretary).

State employment agencies, acting as the agent of the Secretary, denied the individual plaintiffs' requests for payment of training costs under the Trade Act of 1974, 19 U.S.C. § 2101 *et seq.,* as amended by Title XXV of the Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, 95 Stat. 357.

Approximately 650,000 members of the UAW, including the five individual plaintiffs, have been separated from employment due to competition from imports and

have been certified by the Secretary as eligible for programs under the trade adjustment assistance program of the Trade Act. The Omnibus Budget Reconciliation Act of 1981 (the Budget Act) reduced the level and duration of benefits. At the same time, the Budget Act strengthened the training component of the Trade Act by requiring the Secretary to pay dislocated workers the cost of their approved training. Section 2506(2) of the Budget Act, 19 U.S.C. § 2296(a) (Supp. V 1981).

The complaint challenged the Secretary's interpretation of Title XXV of the Budget Act in two respects. First, workers who had received approval for training before October 1, 1981, the effective date of the Budget Act, were denied consideration for payment of their training costs after October 1, 1981. *See* General Administration Letter No. 4–82, § 9(c)(2) (U.S. Dept. of Labor, Employment and Training Administration, November 13, 1981). Second, States were prohibited from approving training when the costs would exceed the amount of funds allocated to them by the Secretary. *Id.,* § 9(c)(1)(g).

Plaintiffs raised a third challenge as a result of discovery. The Secretary refused to allocate to the States monies in addition to a supplemental appropriation of $25 million to pay for approved training of dislocated workers in fiscal year 1982. At the same time, he returned $89 million to the United States Treasury of unused funds for fiscal year 1982 from the Employment and Training Administration account that he concedes could have been used for approved training.

The plaintiffs argue that the Secretary abused his discretion by refusing to spend any monies from this account for approved training. The Secretary maintains that his decision not to spend monies from this account for training dislocated workers was within his absolute discretion. Further, he contends that the unallocated monies in any event are beyond recall.

The Court examines first the Secretary's challenges to the subject matter jurisdiction of the Court and the standing of plaintiffs to bring this action. The resolution of this action on the merits requires analysis of the Trade Act amendments in the Budget Act and the continuing resolutions that funded the Department of Labor in fiscal year 1982.

## II. Subject Matter Jurisdiction

The Trade Act authorizes the Secretary on behalf of the United States to enter into an agreement with a State agency. The cooperating State agency, "as agent of the United States," provides payments and refers dislocated workers for training where appropriate. 19 U.S.C. § 2311(a) (Supp. V 1981).

A "determination" by a State agency regarding entitlement to program benefits is subject to review "in the same manner and to the same extent as determinations under the applicable State law and only in that manner and to that extent." 19 U.S.C. § 2311(d) (1976). State law is defined as the unemployment insurance law of the State approved by the Secretary. *Id.,* § 2319(10) (1976).

The Secretary contends that section 2311(d) divests the Court of jurisdiction over this action. The Court disagrees. Despite a similar provision in the unemployment compensation law, 5 U.S.C. § 8502(d) (1976), federal courts have long reviewed challenges under federal statutory and constitutional law to the administration of unemployment compensation programs. *See, e.g., Christian v. New York Department of Labor,* 414 U.S. 614, 94 S.Ct. 747, 39 L.Ed.2d 38 (1974), *vacating and remanding on other grounds,* 347 F.Supp. 1158 (S.D.N.Y.1972); *California Human Resources Department v. Java,* 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971), *affirming,* 317 F.Supp. 875 (N.D. Cal.1970). Plaintiffs are not seeking review of the individual determinations on their applications for payment of approved training costs. They seek review of the Secretary's interpretation and administration of the amended Trade Act. They claim that the Secretary has violated the Trade Act and the Constitution. In these circumstances, section 2311(d) does not divest the Court of jurisdiction.

### III. Standing

▇ The Secretary argues next that the plaintiffs have not shown any injury in fact. The four individual plaintiffs who received approval for training before October 1, 1981, the Secretary contends, did not show they incurred training expenses after that date or requested payment. The Secretary says that Marian Jackson, the sole plaintiff who applied for training approval after October 1, 1981, did not obtain approval for a reason other than unavailability of funds. And the UAW, the Secretary maintains, has failed to show any of its members were denied reimbursement for training because of the unavailability of funding.

Article III of the Constitution limits the judicial power of the United States to resolving "cases" and "controversies." As part of the case and controversy requirement, "the party who invokes the court's authority [must] show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Valley Forge College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (citations omitted). *See also, Havens Realty Corporation v. Coleman,* 455 U.S. 363, 372, 102 S.Ct. 1114, 1120–1121, 71 L.Ed.2d 214 (1982); *Common Cause v. Department of Energy,* 702 F.2d 245, 250 (D.C.Cir.1983).

Contrary to the Secretary's contention, the record shows clearly that three of the four individual plaintiffs who received approval for training before October 1, 1981 expended funds for training and requested payment after that date. Accordingly, plaintiffs have shown the injury in fact required by Article III of the Constitution for their first claim.

Reginald James was separated from employment with Chrysler Corporation on February 6, 1979. He received approval for a training course in welding technology on July 13, 1981. His request for refund for post-October tuition was denied on December 1, 1981. Emmett Pompey was separated from employment with Chrysler Corporation on August 6, 1979. He received approval for a course in auto mechanics on September 29, 1981. The course was scheduled to run from September 22, 1981, until June 1983. His request for post-October reimbursement was denied on December 8, 1981. Effie Simmons was separated from employment with General Motors Corporation on October 12, 1979. She received approval for a training course as a word processing operator on June 22, 1981. The course began immediately thereafter and was to continue until December 8, 1981. Ms. Simmons' request that the Secretary pay her post-October tuition was denied.

Many persons in approved training before the effective date of the Trade Act amendments, such as Ms. Simmons, had their benefits reduced or terminated and were unable to continue self-financed training. The Trade Act provides for payment of 26 weeks of extended benefits to persons enrolled in approved training. 19 U.S.C. § 2293(a)(1) (1976). The 1981 amendments limited these extended benefits to the 26-week period following the last week of entitlement to regular Trade Act benefits. Section 2505(a)(3) of the Budget Act, 19 U.S.C. § 2293(a)(3) (Supp. V 1981). Plaintiffs have dropped their initial challenge to the Secretary's denial of extended benefits.

The Court finds that Helen Vance, the fourth individual plaintiff who received pre-Budget Act approval, lacks standing. Helen Vance was separated from employment with Ford Motor Company on January 20, 1981. She began a course in business and public administration on June 1, 1981, without obtaining approval of the appropriate State agency. Her subsequent application for approval was denied on September 15, 1981, and she did not appeal. Consequently, she lacks standing to present plaintiffs' first claim.

▇ Plaintiffs' second claim concerns the denial of training approval on the basis of lack of available funds to otherwise eligible workers after October 1, 1981. Marian

Jackson is the sole individual plaintiff presenting this claim. Ms. Jackson was separated from employment with Ford Motor Company on August 24, 1979. She applied initially for self-financed training as a medical technician on June 5, 1981. That application was denied on June 24, 1981. Ms. Jackson's appeal resulted in a remand for redetermination on October 27, 1981. Ms. Jackson was informed by letter on December 15, 1981 that her application was being held in abeyance because no money was available. The determination affirming the denial of her application issued on February 26, 1982. The determination, however, referred to extended benefits only. The sole determination regarding approval of Ms. Jackson's costs of training was the December 15, 1981 letter holding her application in abeyance for lack of funds. Therefore, the Court finds that she has standing to contest the Secretary's challenged policy.

In addition, other UAW members have been denied approval because of the challenged policy. The UAW presented affidavits from two members showing they were denied training approval after October 1, 1981, because of unavailability of funds. Pamela Romero was separated from employment with A.C. Sparkplug in March 1981. She applied for approval of a nursing or physical therapy program in November 1981. Her application was denied because funds for training were frozen. Clifford Tucker was separated from employment with Chrysler Corporation in December 1980. He applied for approval of a program in auto technology to start in September 1981. He was informed throughout the fall of 1981 and the winter and spring of 1982 that no funds were available to pay his costs, and approval was denied.

The Supreme Court has recognized that: [A]n association has standing to bring suit on behalf of its members when (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Washington Apple Advertising Commission,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). It is sufficient if one of the association's members has suffered injury as a result of the challenged action. *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211–2212, 45 L.Ed.2d 343 (1975). Here, two UAW members have shown they were injured by the policy under challenge. The interest of the UAW in encouraging retraining and re-employment of its members is manifest. There is no necessity for additional individual plaintiffs in order to elucidate the challenged policy of the Secretary or to frame appropriate relief. Accordingly, the UAW has associational standing as the representative of Pamela Romero, Clifford Tucker, and other members denied approval for training after October 1, 1981 because no funds were available.

Unemployed UAW members who have been denied approval for training drain union resources. The UAW has devoted significant efforts and funds to aiding dislocated workers. It has an organizational interest in promoting reemployment and retraining of such members. Therefore, the UAW has standing in its own right to contest the Secretary's policy of denying approval of training in fiscal year 1982 on the basis of insufficient allocated funds. *See Havens Realty Corporation v. Coleman,* 455 U.S. 363, 378–79, 102 S.Ct. 1114, 1124–1125, 71 L.Ed.2d 214 (1982).

IV. The Merits

A. *The Statutory Scheme*

The Trade Act of 1974 authorized the Secretary to approve training of a worker eligible for trade adjustment assistance. The Secretary could approve training if he determined that (1) there was "no suitable employment available" for the worker, and (2) "suitable employment ... would be available if the worker received appropriate training." 19 U.S.C. § 2296(a) (1976).

The 1981 amendments made two changes. First, Congress refined the requirement

that suitable employment be available after training. The Secretary now must determine the worker would benefit from the training, there is a reasonable expectation of employment following completion of such training, the training approved is available to the worker from either governmental agencies or private sources, and finally, the worker is qualified to undertake and complete the training. Section 2506(2) of the Budget Act, 19 U.S.C. § 2296(a)(1)(B)–(E) (Supp. V 1981). The second change was that upon approval, the worker becomes entitled to have payment of the costs of such training paid on his behalf by the Secretary. *Id.*, § 2296(a)(1).

**B.** *Workers Approved for Training Before October 1, 1981*

■ The Secretary interpreted the 1981 Trade Act amendments to exclude workers approved for training before October 1, 1981, the effective date of the amendments. That interpretation, although accorded a presumption of correctness, is clearly erroneous in this Court's view.

The Secretary observed correctly that the new criteria for training approval require a more exhaustive and focused inquiry than the old, simpler standard where the Secretary did not have to foot the bill. However, regulations existing at the time the Budget Act passed and relevant legislative history show that Congress did not intend to preclude workers in training on October 1, 1981 from receiving approval under the new criteria.

Section 2514(a)(2)(C) of the Budget Act, codified at 19 U.S.C.A. § 2291 note (1983 Supp.), provides in relevant part that the amendments "shall take effect with respect to determinations regarding training ... that are made or filed after September 30, 1981." At the time the Budget Act passed, 29 C.F.R. § 91.6 (1980) provided that "[d]eterminations with respect to an application shall be made at any time to the extent necessary to establish or protect an individual's entitlement to TRA (Trade Act Assistance)." The Conference Report on the Budget Act stated that the provisions for "training and other employment services" would be "effective for registrations for services ... made or filed after September 30, 1981." H.Rep. No. 97–208, 97th Cong., 1st Sess. 1003 (1981), U.S.Code Cong. & Admin.News 1981, pp. 396, 1365. The conferees' adoption of this language indicates Congress's intention that certified workers who had received training approval within the statutory time limits could register for training and other employment services after September 30, 1981. Plaintiffs James, Pompey and Simmons appealed determinations denying them post-October training costs. Those requests and determinations were made after October 1, 1981. The Court concludes that Congress intended to give "determinations" in the Trade Act amendments the same meaning it had in the contemporary regulations.

The Court does not accept plaintiffs' conclusion that workers in the position of James, Pompey, and Simmons were entitled to payment of training costs incurred after October 1, 1981. In the first place, the statute says the Secretary "may approve" training. Second, the legislative history shows why Congress used "may."

The House version of the Trade Act amendments made training an entitlement once the Secretary determined an eligible worker passed the five criteria. H.R. 3982, Union Calendar No. 109 (June 19, 1981) at 260; H.Rep. No. 97–158, 97th Cong., 1st Sess. 275 (1981), U.S.Code Cong. & Admin. News 1981, p. 396; Cong.Rec. H 3514 (daily ed. Jun. 25, 1981). The conferees rejected the mandatory language, changing "shall approve" to "may approve." H.R. 3982, Calendar No. 188 (Jul. 8, 1981) at 440. The Conference Report recognized the change by noting that the Secretary "must provide and pay training costs *if* he approves training." H.Rep. No. 97–208, 97th Cong., 1st Sess. 1003 (1981) (emphasis added), U.S. Code Cong. & Admin.News 1981, p. 1365.

Nevertheless, the Secretary wrongfully deprived workers in approved training on October 1, 1981 of the opportunity to obtain a favorable determination.

Plaintiffs argued that the Secretary's refusal to pay post-October 1981 costs of training for workers already enrolled in training violated the equal protection clause of the Fifth Amendment of the Constitution by establishing an irrational classification. The Court need not resolve the constitutional issue in view of the resolution of plaintiffs' statutory claim.

## C. Workers Denied Approval for Training After October 1, 1981

### 1. The Sixth Condition

██ The Court agrees with the Secretary that requiring the availability of "[s]ufficient funds allocated to pay the costs of training" does not, on its face, violate the Trade Act. It is a reasonable condition, if applied reasonably. Congress did not establish training as an entitlement, and it could not require the Secretary to spend more than the amount available.

### 2. Availability of Funds

The Secretary contends that when Congress omitted the President's request of $112 million (reduced to $98 million) for training from the Budget Act, and failed to designate funds specifically for training in the first continuing resolution of fiscal year 1982, it permitted him to ignore the training program entirely.

The Court disagrees with the Secretary's view. In contrast to Congress's change of "shall" to "may," there is no evident explanation why Congress deleted the requested amount. Thus, the Court hesitates to infer anything from the deletion. *See State Highway Commission of Missouri v. Volpe,* 479 F.2d 1099, 1116–17 (8th Cir.1973) (cautioning against interpreting statute by rejected amendments or other bills when reasons for rejection are not clear).

The 1981 Trade Act amendments "authorized to be appropriated to the Department of Labor, for each of fiscal years 1982 and 1983, *such sums as may be necessary to carry out the purposes of this chapter.*" Section 2510 of the Budget Act, 19 U.S.C. § 2317 (Supp. V 1981) (emphasis added) (the code compilers changed "chapter" to "part," but it is undisputed that the term encompassed all Trade Act benefits, including training).

The Conference Report noted that the House bill would have authorized "such sums as may be necessary, except that *no less than* $112 million for each of fiscal years 1982 and 1983 is authorized for training, job search, and relocation allowances and 5 percent for program evaluation." H.Rep. No. 97–208, 97th Cong., 1st Sess. 1004 (1981) (emphasis added), U.S.Code Cong. & Admin.News 1978, p. 1366. The Senate amendment would have authorized "such sums as may be necessary for each of fiscal years 1982, 1983, and 1984." The conferees followed the Senate "with respect to the amount authorized" and the House bill limiting authorization to fiscal years 1982 and 1983. *Id.* It can be said with confidence only that Congress did not intend to require the Secretary to spend a minimum of $112 million on training, job search, and relocation allowances.

This Court faced a similar problem of interpretation in *Rocky Ford Housing Authority v. United States Department of Agriculture,* 427 F.Supp. 118 (D.D.C.1977). In *Rocky Ford,* the conference committee rejected the Senate's bill requiring $6 million to be spent for a rural rent supplement program. The conferees instead authorized to be appropriated "such amounts as may be necessary" to carry out a rental assistance program. The *Rocky Ford* Court found an unequivocal intent that the program be implemented. The Secretary of Agriculture had substituted another program for the one under review because of budgetary considerations. The Court held this action an abuse of discretion. *Id.,* at 132–33.

The Secretary of Labor denies that Congress required him to spend anything on training when it authorized to be appropriated "such amounts as may be necessary to carry out the purposes of this chapter." The legislative history of the 1981 Trade Act amendments is filled with expressions of intent by the Secretary that the Admin-

istration intended to spend approximately $100 million on training for workers in fiscal year 1982 if the proposed amendments passed. *See* S.Rep. No. 97–139, 97th Cong., 1st Sess. 535 (1981), U.S.Code Cong. & Admin.News 1978, p. 396; S.Rep. No. 97–103, 97th Cong., 1st Sess. 4 (1981); Departments of Labor, Health and Human Services, Education, and Related Agencies Appropriations for 1982: Hearings Before a Subcommittee of the House Committee on Appropriations, 97th Cong., 1st Sess. 66, 156 (May 5–6, 1981); Departments of Labor, Health and Human Services, Education, and Related Agencies Appropriations for Fiscal Year 1982: Hearings Before a Subcommittee of the Senate Committee on Appropriations, 97th Cong., 1st Sess. 647–48 (April 7, 1981); Trade Adjustment Assistance for Workers, Firms, and Communities: Hearings Before the Subcommittee on Trade of the House Committee on Ways and Means, 97th Cong., 1st Sess. 11, 36 (March 30–31, 1981) (Trade Adjustment Assistance Hearings). The Senate Committee report recognized its amendments, which did not contain the $112 million floor, would "strengthen the training, job search, and relocation aspects of the (Trade Act) program proposals." S.Rep. No. 97–139, 97th Cong., 1st Sess. 535 (1981), U.S.Code Cong. & Admin.News 1981, p. 801.

▪ Appropriations requests by the Executive and statements by Congressional committees do not bind Congress. *Demby v. Schweiker,* 671 F.2d 507, 510–11 (D.C.Cir. 1981), citing *TVA v. Hill,* 437 U.S. 153, 191, 98 S.Ct. 2279, 2300, 57 L.Ed.2d 117 (1978). To effectuate the statutory design, Congress must have intended that the Secretary exercise reasoned discretion in funding the training program.

▪ The Secretary admits that funds were available for allocation to training under the four continuing resolutions appropriating funds for the Department of Labor through fiscal year 1982. *See* H.J.Res. 325, Pub.L. No. 97–51, 95 Stat. 958 (Oct. 1, 1981); H.J.Res. 368, Pub.L. No. 97–85, 95 Stat. 1098 (Nov. 23, 1981); H.J.Res. 370, Pub.L. No. 97–92, 95 Stat. 1183 (Dec. 15, 1981); H.J.Res. 409, Pub.L. No. 97–161, 96 Stat. 22 (Mar. 31, 1982); November 10, 1982 declaration of Sandra T. King, Budget Officer, Employment and Training Administration (ETA), Department of Labor.

The Secretary contends, however, that he was required to spend only $25 million on training, job search allowances, and relocation allowances by the following provision in Pub.L. No. 97–92:

> *In addition to any sums otherwise appropriated,* there is appropriated an *additional* sum of $25,000,000 which shall be made available for training, job search allowances, and relocation allowances under sections 236, 237, and 238 of the Trade Act of 1974.

*Id.,* § 101(a)(6) (emphasis added).

The plain language of section 101(a)(6) provides that the $25,000,000 is an "additional sum." It is a cardinal principle of statutory construction that interpretations should be favored that "give effect to every provision of a statute so that no part is rendered inoperative or superfluous, void or insignificant." *Public Citizen Health Research Group v. Food and Drug Administration,* 704 F.2d 1280 (D.C.Cir.1983), quoting 2A C. Sands, Statutes and Statutory Construction § 46.06 (4th ed. 1973).

Rep. Conte, the author of the amended H.J.Res. 370 that became Pub.L. No. 97–92, noted on the floor of the House that the provision "adds $24 million for trade adjustment and training activities." Cong.Rec. H9120 (daily ed. Dec. 10, 1981) (the amount was later changed to $25 million). Senator Hatfield, the Chairman of the Senate Appropriations Committee, said in discussing the 4 percent across-the-board cut proposed in the resolution: "We are trying to protect programs rather than empower the administration with authority to impound or to destroy or strangle programs." Cong.Rec. S14965 (daily ed. Dec. 10, 1981); *id.,* at S14962. The Secretary's policy left the States in the unconscionable position of telling workers that the Secretary would pay for approved training, without advising them that he had not allocated funds available to implement them.

The Court concludes that the $25 million appropriation for training, relocation, and job allowances was in addition to amounts appropriated that were to be spent according to the Secretary's exercise of reasoned discretion.

### 3. Judicial Review of the Secretary's Refusal to Allocate Money Other Than the $25 Million Appropriation

██ The Secretary argues that his decision not to spend money on training from the Employment and Training Administration (ETA) $3.8 billion appropriation is unreviewable as a decision committed to agency discretion by law under the Administrative Procedure Act, 5 U.S.C. § 701(a)(2) (1976). He points out that most of the cases cited by plaintiffs where courts ordered agencies to spend money involved appropriations for designated programs in specific amounts or program terminations. *See, e.g., Commonwealth of Pennsylvania v. Weinberger,* 367 F.Supp. 1378 (D.D.C.1973); *Guadamuz v. Ash,* 368 F.Supp. 1233 (D.D.C. 1973).

The Secretary was not required to spend all funds appropriated to the Department of Labor in the continuing resolutions. This does not, however, endow him with the authority to use unfettered discretion as to when and how the monies may be used. A report from the Senate Appropriations Committee report in November 1981 stated, for example, that "the Committee expects the Secretary will use a reasonable amount of available funds for projects that will assist displaced workers return to self-sustaining productive employment through retraining, relocation and related activities ..." S.Rep. No. 97–268, 97th Cong., 1st Sess. 10 (1981) (Report on Departments of Labor, Health and Human Services, Education, and Related Agencies Appropriations Bill, 1982).

The use of "may" in the authorization for appropriations and in the continuing resolutions, in light of the legislative history of the 1981 Trade Act amendments, did not give the Secretary discretion to refuse to make funds available for a congressionally mandated training program. *See Commonwealth of Pennsylvania v. Lynn,* 501 F.2d 848, 854 (D.C.Cir.1974); *State Highway Commission of Missouri v. Volpe,* 479 F.2d 1099, 1109 (8th Cir.1973); *cf. United States v. Rodgers,* —— U.S. ——, —— – ——, 103 S.Ct. 2132, 2148–2149, 2150, 76 L.Ed.2d 236 (1983).

The agency discretion by law provision of the APA applies to the rare instances where there is no law to apply. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971). That pragmatic determination is made by evaluating three factors: "the need for judicial supervision to safeguard the interests of the plaintiffs; the impact of review on the effectiveness of the agency in carrying out its congressionally assigned role; and the appropriateness of the issues raised for judicial review." *Natural Resources Defense Council v. Securities and Exchange Commission,* 606 F.2d 1031, 1044 (D.C.Cir. 1979). The need to ensure that the Secretary exercises a reasoned discretion in funding and operating the training program enacted by Congress, together with the strong presumption of judicial review, compel the Court to reject the Secretary's argument of unreviewability.

## V. Remedy

### A. *Mootness*

██ Although the parties have not raised the issue of mootness, the Court addresses it since fiscal year 1982 has passed. Assuming *arguendo* that any funds available have lapsed, this action is not made moot because the Secretary's actions, in the context of the litigation process, are "capable of repetition, yet evading review." *Roe v. Wade,* 410 U.S. 113, 124–25, 93 S.Ct. 705, 712–713, 35 L.Ed.2d 147 (1973); *Batterton v. Marshall,* 648 F.2d 694, 699 (D.C.Cir. 1980). In addition, a court may grant a declaratory judgment even though it declines to issue an injunction or writ of mandamus. *Powell v. McCormack,* 395 U.S. 486, 499, 89 S.Ct. 1944, 1952, 23 L.Ed.2d 491 (1969); *State Highway Commission of Missouri v. Volpe,* 479 F.2d at 1103. Defendant bears the burden of demonstrating that

there is no reasonable expectation that the wrong will be repeated. *Williams v. Barry,* 708 F.2d 789 (D.C.Cir.1983).

### B. *Injunctive Relief*

 Courts have power to order that funds be held available beyond their statutory lapse date if equity so requires. *State of Connecticut v. Schweiker,* 684 F.2d 979, 997 (D.C.Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1197, 75 L.Ed.2d 440 (1983). That power exists where, as here, suit was filed before budget authority lapsed. *Id.; National Association of Regional Councils v. Costle,* 564 F.2d 583, 588–90 (D.C.Cir.1977).

By statute, the mandated return of an appropriation or fund to the Treasury at the end of a definite period "does not affect the status of lawsuits or rights of action involving the right to an amount payable from the balance." 31 U.S.C.A. § 1502(b) (1983). In fact, the head of an agency has the power to restore to the appropriate account part of a withdrawn, unobligated balance that has reverted to the Treasury where he decides that it is required "to pay obligations and make adjustments." *Id.* § 1552(a)(2).

The Secretary's answers to interrogatories and the affidavits of ETA Budget Officer Sandra T. King indicate that funds exist for Trade Act training from at least two sources.

The first source is the $89 million (less $4 million designated for the Job Corps by Congress) of unobligated federal funds in the ETA account for fiscal year 1982. The second source is the gap between the appropriated amount of $306 million for the Federal Unemployment Benefit Account (FUBA), and the total amount obligated to the States from the FUBA account—$75 million. The Secretary's claim that FUBA money cannot be used or transferred to pay for training costs is belied by the legislative history of the Budget Act.

The $112 million proposed originally by the Secretary for training was contained in the FUBA account. The Secretary's representative told a Congressional committee in March 1981:

What we intend to do is this, if the Congress enacts the (Trade Act amendments), which we certainly hope it does, we would immediately move forward with a budget amendment. For now, the $112 million I mentioned *is provided for in the Federal unemployment benefit account—FUBA. We would probably reduce the FUBA account by that amount in budget amendment and go to some other authorization.*

Trade Adjustment Assistance Hearings, at 36 (testimony of William B. Lewis, Administrator, Unemployment Insurance Service, Employment and Training Administration, Department of Labor). (emphasis added).

The Court permits plaintiffs to take the deposition of Budget Officer Sandra T. King and the deposition of any other appropriate budget officer of the Department of Labor within 10 days of the date of this order to ascertain the availability of fiscal year 1982 funds for training dislocated workers under the Trade Act.

The Court requires the Secretary, exercising his reasoned discretion, to provide to the Court within 25 days of the date of this order a plan of funding Trade Act training costs from available fiscal year 1982 funds other than the $21.4 million obligated in fiscal year 1982 for Trade Act training. The plan shall include a method of permitting applications by persons, such as plaintiffs James, Simmons, and Pompey, who obtained approval for training before October 1, 1981, and whose requests for payment of costs after October 1, 1981 were denied. The plan shall also include a method of permitting application by persons, such as plaintiff Jackson, and declarants Romero and Tucker, who were denied initial approval for training during fiscal year 1982 for lack of sufficient allocated funding.

The Secretary has carried over $5.4 million in unobligated fiscal year 1982 funds for training to fiscal year 1983. The same treatment is possible for funds that would have been obligated in fiscal year 1982 under a reasoned exercise of agency discre-

tion. Since authorization for Trade Act training expires at the end of fiscal year 1983 under Section 2510 of the Budget Act, 19 U.S.C. § 2317 (Supp. V 1981), the Court will not grant extensions.

## ON MOTION FOR RECONSIDERATION

This action is before the Court on defendant's motion for reconsideration or clarification and for stay of submission of plan pending ruling on motion for reconsideration or clarification. The Court denies the motion, with the exception that defendant's time to submit the plan is extended to July 12, 1983, to permit the Secretary to consider this memorandum order in preparing his plan.

The defendant, the Secretary of Labor, urges the Court to enter judgment in his favor on the basis that almost no fiscal year 1982 funds remain available for Trade Act training. The Court will determine the current availability of funds with the entry of appropriate injunctive relief. In the memorandum opinion of June 10, 1983, the Court did not award injunctive relief, conclusively determine the amount of available funds, or require the Secretary to spend funds. The appropriateness and scope of injunctive relief are best resolved after, not before, the Secretary submits his plan.

The Secretary also seeks clarification of the contents to be included in the plan. Judicial review of a plan should occur after its submission, not before. In framing injunctive relief, the Secretary's views on how much of available funds to use and the scope of the plan are entitled to deference. *See Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–824, 28 L.Ed.2d 136 (1971). The submission of the plan will enable the Court to determine, based on a fuller record than exists now, the appropriateness and scope of injunctive relief. *See City of Los Angeles v. Adams,* 556 F.2d 40, 51–52 (D.C.Cir.1977).

Accordingly, upon consideration of defendant's motion for reconsideration or clarification and for stay of submission of plan pending ruling on motion for reconsideration or clarification, plaintiffs' opposition and letter of June 30, 1983, defendant's reply, and the entire record in this action, it is by the Court this 1st day of July 1983,

ORDERED that defendant's motion for reconsideration or clarification and for stay of submission of plan pending ruling on the motion is denied, with the exception that defendant's time to file the plan required by the order in this action of June 10, 1983, is extended from July 5, 1983, until July 12, 1983.

## ON INJUNCTIVE RELIEF

This action is before the Court for the entry of appropriate injunctive relief in accordance with the Court's memorandum opinion and order of June 10, 1983. The Court has considered with care the renewed motion for reconsideration or clarification by the Secretary of Labor (Secretary), the Secretary's plan submitted pursuant to the order of June 10, 1983, and the plaintiffs' alternative plan. In framing appropriate injunctive relief, the Court reviews first the availability of funds and then the terms of relief.

### 1. Availability of Funds

The Secretary's abuse of discretion, as determined by the Court, was his refusal to allocate funds for Trade Act training from the continuing resolution appropriations of Congress in fiscal year 1982 for the Department of Labor other than Congress's supplemental appropriation of $25 million. *See* order of June 10, 1983, ¶ 2; memorandum opinion of June 10, 1983, at 20, 21.

Nevertheless, the Secretary contends his error lay only in returning money to the Treasury rather than spending such money on Trade Act training. *See* defendant's reply memorandum in support of motion for reconsideration, clarification and stay, at 3. Under the Secretary's reasoning, only $2 million, which lapsed to the Treasury from "Other National Programs" source code for special national programs and activities, would be available to fund injunctive relief. This narrow characterization of the Court's holding is in error, for the Court noted

specifically that the Secretary was not required to spend all funds appropriated. Memorandum opinion, at 21. The Secretary lacked discretion, the Court found, to ignore a congressionally mandated program at the expense of other programs.

The record reflects clearly that $85,120,000 in federally unobligated fiscal year (FY) 1982 funds from the Employment and Training Assistance (ETA) appropriation for the Department of Labor is available for the satisfaction of valid obligations incurred in FY 1982. While these funds were allocated originally to other programs, upon their deobligation during FY 1982, they became available to meet valid obligations, including Trading Act training. 31 U.S.C.A. §§ 1502(b), 1552(a)(2) (1983); deposition of Sandra T. King, Budget Officer for the Department of Employment and Training Administration, Department of Labor (King Deposition), at 63–66, 77 (June 20, 1983).

The Court agrees with the Secretary that the $33,933,000 in federally unobligated funds from the Federal Unemployment Benefits and Allowances (FUBA) account in fiscal year 1982 are not legally available for payment of training costs. The Court cited the congressional testimony of William Lewis, currently Administrator of the Office of Employment Security in the ETA, to illustrate the Secretary's expressed determination to spend increased funds available for Trade Act training if the Administration's proposed amendments to reduce benefits passed. Those amendments passed, but the Secretary nonetheless refused to spend funds available during FY 1982 on Trade Act training, other than the $25 million supplemental appropriation. In view of the overwhelming weight of the legislative history, it is not material that one congressional report relied upon by the Court, S.Rep. No. 97–268, 97th Cong., 1st Sess. 10 (1981), may have referred to non-Trade Act training programs.

Additionally, $4,976,000 in federally unobligated FY 1982 funds was returned to the U.S. Treasury. These funds were appropriated for state administrative expenses relating to the unemployment insurance and employment services systems, including administration of trade adjustment assistance programs, and are available for any valid FY 1982 obligation. King Deposition, at 51, 78, 81.

2. Terms of Injunctive Relief

The injunctive relief ordered by the Court aims to reimburse actual costs expended by individuals who would have likely received training approval if the Secretary had allocated available funds. Relief is not provided to individuals who failed to apply for training approval under the Trade Act. Relief to such persons is simply too speculative. The Court declines to recreate a training program. That would exceed the scope of appropriate judicial relief. Rather, the Court frames the remedy to compensate individuals for identifiable personal obligations incurred by them in FY 1982 which the Trade Act training program, if administered properly, would have likely absorbed. Accordingly, the Secretary, through participating state employment service agencies (SESAs) shall make approval determinations de novo for eligible individuals using existing guidelines.

Where determinations are made to reimburse actual expenditures or personal obligations for training costs incurred in FY 1982, the Secretary, through participating SESAs, shall also consider payment from FUBA account funds of up to 26 weeks of extended Trade Act benefits that are otherwise payable for weeks of approved training under 19 U.S.C. § 2293(a) (Supp. V 1981). To effectuate such relief, the eligibility date for purposes of the 26 weeks of extended benefits shall be "the 26 week period following the last week of entitlement to trade readjustment allowances," without regard to the fact that this period has long since passed. Id. § 2293(a)(3). In many cases, the Secretary's failure to spend available funds for training led inevitably to the denial of extended benefits. It would be inequitable to permit the Secretary's error to foreclose extended benefits that are otherwise payable.

The Secretary need not award weeks of extended benefits where the previous denial was due to untimely application. Further, persons who have received extended benefits or have obtained reimbursement for their training costs from other public sources are not entitled to relief. These individuals have not suffered any harm from the Secretary's failure to spend available funds on training. The Court expects that the available FY 1982 funds—$85,120,000 for reimbursement of training costs; $33,933,000 for extended benefits; and $4,976,000 for state administrative expenses—will be more than sufficient to satisfy the relief ordered.

Accordingly, upon consideration of the plan submitted by the Secretary, the Secretary's renewed motion for reconsideration or clarification, plaintiffs' opposition thereto and alternative plan, and the entire record in this action, for the reasons expressed above, it is by the Court this 15th day of August 1983,

ORDERED that the Secretary's renewed motion for reconsideration or clarification is granted to the extent that the funds in the Federal Unemployment Benefits and Allowances (FUBA) account are held not available for Trade Act training reimbursement; it is further

ORDERED that the Secretary's renewed motion for reconsideration or clarification is denied in all other respects; it is further

ORDERED that the Secretary, within 45 days of the date of this order, shall notify all state employment service agencies (SESAs) acting as the Secretary's agent in processing applications for benefits and training under the Trade Act, that individuals in the following categories may be eligible for relief as a result of this case:

(1) individuals who were enrolled in training approved under the Trade Act on October 1, 1981, and who expended funds or incurred personal obligations for costs of that training in fiscal year (FY) 1982, and were not reimbursed by the Secretary or any other public source;

(2) individuals who applied for training approval under the Trade Act after October 1, 1981, were denied approval on the basis of insufficient funds, and expended funds or incurred personal obligations in FY 1982 for costs of training which have not been reimbursed by any public source; it is further

ORDERED that the Secretary, within 45 days of the date of this order, shall direct all participating SESAs to identify individuals who are within these categories from agency records; undertake all reasonable efforts to notify these individuals by writing to their last known address and advertising in the media, that such individuals may apply for a determination of eligibility for reimbursement of expenditures or personal obligations incurred in FY 1982 for training costs and for up to 26 weeks of extended benefits for weeks of such training; and conduct *de novo* approval determinations for eligible individuals using existing guidelines; it is further

ORDERED that the Secretary make available to participating SESAs funds for reimbursement of training costs under the terms of this order up to $85,120,000 from the amount federally unobligated in the Employment and Training Assistance (ETA) account at the end of FY 1982; up to $33,933,000 for payment of extended weeks of trade adjustment benefits under the terms of this order from the amount federally unobligated in the FUBA account for FY 1982; and up to $4,976,000 for SESAs' administrative costs in implementing this order from the amount federally unobligated in FY 1982 for state administrative expenses relating to the unemployment insurance and employment service systems; and it is further

ORDERED that the Secretary make all reasonable efforts to ensure payment is made to individuals determined entitled to relief under the terms of this order no later than December 30, 1983.